**Russell R. & Virginia R. MEARKLE, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 86–2092.

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 1, 1987.

Decided Feb. 9, 1988.

Robert A. Clemente, Clark, Hardy, Lewis, Pollard & Page, P.C., Birmingham, Mich., Jerry C. Wagner, for petitioners-appellants.

William F. Nelson, Chief Counsel, IRS, Washington, D.C., Michael L. Paup (Lead Counsel), Roger M. Olsen, Tax Div.—Dept. of Justice, Washington, D.C., for respondent-appellee.

Before KEITH, MILBURN and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Russell R. and Virginia R. Mearkle ("taxpayers") appeal from an order of the United States Tax Court, 87 T.C. 527, denying their motion for an award of litigation costs against the Commissioner of Internal Revenue. The costs arose in connection with their successful petition for a redetermination of a claimed $149 deficiency in the amount of federal income taxes they paid for 1981.

The taxpayers operated an Amway business from two rooms in their residence and, on their 1981 income tax return, claimed a home office deduction for that use. The Commissioner disallowed the deduction, based upon proposed income tax regulation § 1.280A–2(i)(2)(ii), 45 Fed.Reg. 52404 (1980) (proposed Aug. 7, 1980),[1] which purported to interpret 26 U.S.C. § 280A(c)(5) (1982), *amended by* 26 U.S.C. A. § 280A (West Supp.1987).[2] The statute

---

1. **Prop.Treas.Reg. § 1.280A–2(i)(2)(ii)**

   (ii) Exclusion of certain amounts. For purposes of section 280A and this section, gross income derived from use of a unit means gross income from the business activity in the unit reduced by expenditures required for the activity but not allocable to use of the unit itself, such as expenditures for supplies and compensation paid to other persons. For example, a physician who uses a portion of a dwelling unit for treating patients shall compute gross income derived from use of the unit by subtracting from the gross income attributable to the business activity in the unit any expenditures for nursing and secretarial services, supplies, etc.

   This proposed regulation was revised, although no significant changes were made, by 48 Fed. Reg. 33325 (1983) (proposed July 21, 1983) and renumbered § 2.280A–2(i)(2)(iii).

2. **§ 280A. Disallowance of certain expenses in connection with business use of home, rental of vacation homes, etc.**

   . . . .

   **(c) Exceptions for certain business or rental use; limitation on deductions for such use.**

   . . . .

limited deductions for home office use to "gross income" derived from the business activity conducted out of the home office. The proposed regulation defined gross income as a net figure derived after subtracting certain business expenditures, with the result that the ceiling on the home office expense deduction was effectively lowered. For the taxpayers, application of the proposed regulation eliminated the claimed deduction altogether.

While the taxpayers' petition for redetermination of the deficiency was pending before the tax court, the court released its opinion in *Scott v. Commissioner*, 84 Tax Ct. 683 (1985), in which it determined that the proposed regulation was inconsistent with the statute. The Commissioner's opportunity to appeal *Scott* expired on July 14, 1985, and on October 16, 1985 he offered to concede this case and forwarded his standard proposed decision to the taxpayers for their approval. On February 4, 1986, they proposed an alternative decision which included an acknowledgement by the Commissioner that he was conceding the

case because he did not want to relitigate the *Scott* issue on these facts. On February 5, the Commissioner advised taxpayers' counsel that inclusion of the acknowledgement was unacceptable. The case was scheduled for trial on February 10, at which time the Commissioner asked the court to dismiss the case and enter a decision holding that there was no deficiency. The taxpayers opposed the motion and sought to go to trial. The tax court granted the Commissioner's motion to dismiss, and entered a decision in favor of the taxpayers.

The taxpayers then moved for allowance of litigation costs, pursuant to 26 U.S.C. § 7430, (1982), *amended by* 26 U.S.C.A. § 7430 (West Supp.1987),[3] which provided that a taxpayer who substantially prevailed on the issue presented and established that the position of the United States was unreasonable, could be awarded judgment for reasonable litigation costs. Although the tax court held that the taxpayers prevailed on the substantive issue in the case, it

(5) **Limitation on deductions.**—In the case of a use described in paragraph (1), (2), or (4), and in the case of a use described in paragraph (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of—
(A) the gross income derived from such use for the taxable year, over
(B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used.

3. **§ 7430. Awarding of court costs and certain fees**
(a) **In general**
In the case of any civil proceeding which is—
(1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and
(2) brought in a court of the United States ..., the prevailing party may be awarded a judgment for reasonable litigation costs incurred in such proceeding.
(b) **Limitations**
(1) **Maximum dollar amount**
The amount of reasonable litigation costs which may be awarded under subsection (a) with respect to any prevailing party in any civil proceeding shall not exceed $25,000.
....

(c) **Definitions**
For purposes of this section—
(1) Reasonable litigation costs
(A) **In general**
The term "reasonable litigation costs" includes—
(i) reasonable court costs,
(ii) the reasonable expenses of expert witnesses ...,
(iii) the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and
(iv) reasonable fees paid or incurred for the services of attorneys in connection with the civil proceeding.
....
(2) Prevailing party
(A) **In general**
The term "prevailing party" means any party to any proceeding described in subsection (a) ... which—
(i) establishes that the position of the United States in the civil proceeding was unreasonable, and
(ii)(I) has substantially prevailed with respect to the amount in controversy, or
(II) has substantially prevailed with respect to most significant issue or set of issues presented.

concluded that the Commissioner's advocacy of a position embodied in either a proposed or final regulation is reasonable until such time as it is overturned by a court.

■ Under the circumstances of this case, we are unable to agree that the Commissioner's reliance upon the proposed regulation was reasonable.

The tax court acknowledged that, when discussing the degree of deference courts should accord a regulation which has incorporated the position of an agency, proposed regulations are not entitled to the same deference as are final regulations. In the instance of a proposed regulation, the promulgating agency has not had the benefit of administrative hearings or of comments from interested persons concerning the advisability of modifying the proposed regulation or adopting it as final.

Nevertheless, the tax court concluded that, for purposes of requests for awards of litigation costs under 26 U.S.C. § 7430, proposed regulations should be accorded the same weight as final regulations, lest the operations of the Internal Revenue Service grind to a halt while the Commissioner second-guesses the courts in their review of the validity of proposed regulations.

■ The fault with the tax court's position is that it would permit the Commissioner to frustrate the deterrent envisioned by Congress—that 26 U.S.C. § 7430 should dissuade abusive conduct and overreaching by the Commissioner. See H.R.Rep. No. 404, 97th Cong., 2d Sess. at 11 (Dec. 14, 1981), U.S.Code Cong. & Admin.News 1982, pp. 781, 787. The Commissioner could thwart the intent of Congress through the device of promulgating a proposed regulation which has no reasonable support in the unambiguous statute upon which it is said to be based, but instead, is manifestly in conflict with that statute. Forcing a taxpayer to choose between acceding to such a regulation, or assuming the burden of contesting it, amounts to the kind of overreaching Congress sought to address. Under those extraordinary circumstances, we think it is better to hold that the Commissioner cannot be said to have reasonably relied upon a proposed regulation which he

knew, or should have known, was patently invalid.

Those are the circumstances with which we are confronted. In view of the statutory scheme defining the terms "gross income," "adjusted gross income," and "taxable income," it was manifestly and patently unreasonable for the Commissioner to interpret the term "gross income" found in 26 U.S.C. § 280A(c)(5) as meaning net income; incorporate that misinterpretation in a proposed regulation; and then base his litigation position upon that proposed regulation. The position of the Commissioner having been unreasonable, the taxpayers are entitled to judgment for reasonable litigation costs.

■ We are concerned, however, with the taxpayers' attempt to support a request for the maximum award of $25,000, as the reasonable cost of litigating a $149 claim. It appears that in the initial request, New York counsel sought over $11,000 in attorney fees for preparation of a routine five-page petition for redetermination of the claimed deficiency, and over $15,000 for the preparation of a research memorandum. We regard as disturbing the suggestion, found in the record, that the fees requested of the tax court may not relate solely to the representation of these clients, since such a suggestion raises serious implications under the Code of Professional Responsibility. In addition, litigation costs will not be awardable for the period following the Commissioner's offer to concede the case, if the court concludes that the taxpayers unreasonably protracted the proceedings.

The order of the tax court is reversed and this cause is remanded for further proceedings.